A. F. HERDEN v. STATE, *ex rel.* WALTER H. DONOVAN.

188 So. 849.
Opinion Filed March 4, 1937.

*Blanchard & Hoffman,* for Appellant;

*T. G. Futch,* for Appellee.

WHITFIELD, P. J.—The statutes of Florida contain the following:

"Section 10. That Section 16 of Chapter 14832, Laws of Florida, Acts of 1931, shall be amended so as to read as follows:

"Section 16. Within the enclosure of any race track licensed and conducted under this Act, but not elsewhere, the sale of pari mutuel pools under such regulations as the Commission shall provide, is hereby authorized and permitted. Commissions on such pools shall in no event and at no tract exceed ten per cent and the odd cents of all redistributions to be made on all mutuel contributions exceed-

ing a sum equal to the next lowest multiple of five on horse races; and shall not exceed fifteen per cent and the odd cents of all redistributions to be made on all mutuel contributions exceeding a sum equal to the next lowest multiple of ten on dog race tracks. Said maximums shall include the three per cent tax hereinbefore prescribed. No person or corporation shall directly or indirectly purchase pari-mutuel tickets or participate in the purchase of any part of a pari-mutuel pool for another for hire or for any gratuity, and no person shall purchase any part of a pari mutuel pool through another, wherein he gives or pays directly or indirectly such other person anything of value, and any person violating this section shall be deemed guilty of a misdemeanor." Chap. 17276, Acts of 1935.

"Whoever shall erect, establish, continue or maintain, own or lease any * * * place or building where games of chance are engaged in in violation of law or any place where any law of the State of Florida is violated, shall be deemed guilty of a nuisance, and the building, erection, place, tent or booth and the furniture, fixtures and contents are also declared a nuisance, and all such persons, places, shall be abated and enjoined as provided in Article 19, Chapter X, Title III, Second Division of these Compiled General Laws. (Ch. 7367, Acts 1917, Sec. 1)" Sec. 7832 (5639) C. G. L. See also Sec. 5029 (3223) et seq. C. G. L.

Walter H. Donovan, a citizen of Pinellas County, Florida, as relator, filed a bill in equity in the name of the State of Florida against A. F. Herden.

It is in effect alleged that by cited statutes "the sale of pari-mutuel pools is authorized and permitted within the enclosure of any race track licensed and conducted in accordance with the provisions of law under such regulations as the State Racing Commission of the State of Florida shall provide" but not elsewhere. That Section 16, Chapter

14832, Acts of 1931, as amended by Chapter 17276, Acts of 1935, provides that: " 'No person or corporation shall directly or indirectly purchase pari-mutuel tickets or participate in the purchase of any part of a pari-mutuel pool for another for hire or for gratuity and no person shall purchase any part of a pari-mutuel pool through another, wherein he gives or pays directly or indirectly such other person anything of value, and any person violating this section shall be deemed guilty of a misdemeanor.' "

"That the formation, establishment, conduct, supervision, sale or participation in any manner in any pari-mutuel pool in any manner other than as provided by said Section 16, * * * is a violation of the General Laws of the State of Florida, relating to gambling, as well as a violation of said Section 16, and constitutes a nuisance as defined by Section 7832 of the Compiled General Laws of Florida of 1927, in that it is manifestly injurious to the morals and manners of the people as described in Section 7817 of the Compiled General Laws of Florida of 1927, and is a game of chance operated in violation of law when not operated as provided by Section 16 as aforesaid;

"That there is one dog race tract in Pinellas County, operated by St. Petersburg Kennel Club in accordance with Chapter 17276, Laws of Florida, Acts of 1935, under the supervision of the State Racing Commission of the State of Florida, whereat the sale of pari-mutuel pools is carried on and conducted under regulation provided by said Commission; that said track is properly enclosed and an admission fee or price is charged and collected upon which the State of Florida demands and receives a tax of ten cents on each such admission, and it is impossible for any person to actually purchase any part of any such pari-mutuel pool at such race track without gaining admission to said

grounds, upon which admission the tax as aforesaid is due and payable to the State of Florida;

"That the purpose and intent of the Legislature of the State of Florida in enacting the law permitting pari-mutuel pools and betting was to permit such form of gambling or betting under the supervision of the State Racing Commission of the State of Florida, and in compliance with said law, and within the enclosures of race tracks operated in compliance with said law, and to confine all such pari-mutuel pools, wagering, betting and gambling to the enclosures of such tracks * * *.

"That the defendant, A. F. Herden, notwithstanding the provisions of said Chapter 17276, Laws of Florida, Acts of 1935, and particularly Section 16 thereof, is operating a place of business under the trade name 'Herden's Original Agency' in the City of St. Petersburg, Florida, located in the Florida Arcade in said City, whereat he advertises and purports to render to persons and individuals desiring to place bets on said race track the service of purchasing or securing pari-mutuel tickets or coupons evidencing participation in such pool as such person or individual may designate, on the pretense that no charge is made therefor, but requiring of each person to whom he grants such service a further contract authorizing the said A. F. Herden to collect any cash value represented in any such ticket or coupon from the St. Petersburg Kennel Club retaining ten per cent fee for the collection service, all in violation of said Section 16 of said Chapter 17276, Laws of Florida, Acts of 1935."

A temporary and a permanent injunction were prayed. A motion to dismiss the bill of complaint was denied. The parties submitted the following:

"AGREED STATEMENT OF FACTS.

"This cause came on to be heard this second day of

March A. D. 1936, before the Honorable John I. Viney of the said Court, in Chancery Sitting, at St. Petersburg, Pinellas County, Florida. After the Ruling upon the defendant's motion to strike and defendant's motion to dismiss, for the purpose of determining the right of the plaintiff to a temporary injunction, thereupon the following agreed statement of facts was entered into with the approval of the Court to be received as all the testimony in the case:

"IT IS HEREBY STIPULATED AND AGREED between the counsel representing the plaintiff and the defendant respectively that the taking of testimony be waived in the form of questions and answers and that the testimony if introduced by questions and answers would be in effect, as follows:

"That the plaintiff has no personal interest in the case nor any interest in the matter involved, except as a private citizen of the State of Florida; that the business operated by the defendant and complained of in the bill of complaint is as follows:

"That the defendant operates a place of business in the City of St. Petersburg, Pinellas County, Florida, known as Herden's Original Agency, located at 464 First Avenue North, room No. 35, in the city of St. Petersburg, Pinellas County, Florida; that the St. Petersburg Kennel Club owns and operates a legally authorized dog track outside the city limits of St. Petersburg, in Pinellas County, Florida, a distance of approximately seven miles from the center of the City of St. Petersburg, Florida; that the defendant's place of business is approximately a block and a half from the center of the City of St. Petersburg, Florida; that the defendant nor any of his agents are interested in the ownership or operation of the St. Petersburg Kennel Club or the dog track operated by it:

"That the defendant and his agents at his place of business aforesaid are open to receive orders and money for the purchase of pari-mutuel tickets of the St. Petersburg Kennel Club, the same to be purchased pursuant to a certain contract, a copy of which is herewith filed and received in evidence as Defendant's Exhibit No. 1; that the defendant receives the price charged by the St. Petersburg Kennel Club for the purchase of any ticket from any customer with whom he deals, pursuant to said contract, delivers a copy of said contract signed by both the customer and the defendant, and uses the entire amount received from the customer to purchase said ticket or tickets and purchase the same within the enclosure of the St. Petersburg Kennel Club; that the defendant has no other agreement nor makes any other charges, other than those expressed in the body of said contract, referred to as Exhibit 1, which provides that the defendant will collect the amount or cash value of each ticket which wins or is on a winning dog, deducting therefrom for his services in making such collection ten per cent. of the cash value of any such ticket or tickets so purchased by him in accordance with said contract which said provisions are made part of and will appear on the contract, copy of which is hereto attached and above referred to as defendant's Exhibit 1.

"That the said contract expressly provides that there is no charge for the purchase of the item or ticket but does provide that in the event said item or ticket has a cash value after the race is run, that he will collect the same, receiving for such collection a fee of ten per cent of the cash value of such ticket or item; that on any deposits received by the defendant for the purchase of a ticket or tickets for a customer of the defendant and on any tickets purchased for the customer which are not a winning ticket or which have no cash value after the race is run, the defendant receives no compensation directly or indirectly; that the de-

fendant has no interest in any ticket purchased by him for another and stands to lose nothing nor gain anything because of his purchase for another from monies deposited with him and tickets purchased by him within the enclosure of the track, except, as above stated; that the defendant neither advises his customers nor posts any odds on the dogs to be run in any race; that the said monies deposited with him for the purchase of tickets for his customers or clients are so deposited and received by him and tickets purchased therefrom without any knowledge or agreement between the defendant and his clients or customers as to the odds or cash value that said ticket will bear, if a winning ticket; that the defendant collects the cash value of any tickets purchased by him from the St. Petersburg Kennel Club and within its enclosures immediately after the race or races for that particular meet and is custodian of said winnings until the morning of the following day, at which time the defendant delivers to the purchaser of said winning ticket the total cash value less the ten per cent. collection as stated in contract marked defendant's Exhibit 1, receipt of which is acknowledged upon the reverse side of the contract with the purchaser; that the allegations as to the criminal prosecution against the defendant upon the affidavit of Roy Weston, as alleged in the bill of complaint and the result thereof and the judgment of the Court therein are admitted in evidence as true; that the defendant operated a messenger service or service of a similar nature prior to the passage of Chapter 17276, Laws of Florida; Acts of 1935, pursuant to an employment contract, a copy of which is received in evidence as defendant's Exhibit No. 2 and hereby made a part of this agreement of fact; that in and by said contract, defendant's Exhibit 2, and at that time the defendant charged and received a purchasing

or buying fee of five per cent. and a collection fee of ten per cent.

"It is hereby stipulated by and between counsel for the plaintiff and counsel for the defendant herein that in the event the said defendant shall desire to prosecute an appeal from the Order of the Court entered in this case that a supersedeas may be granted without bond on the part of said defendant, it being understood that this stipulation shall include not only the defendant herein, to-wit: A. F. Herden, but also C. E. Adams, Peggie Madden, F. T. Stoll, F. J. Samson, and J. S. Laneir, if they desire to take advantage hereof."

A temporary injunction was granted and the defendant, A. F. Herden, appealed.

Counsel for plaintiff in error, A. F. Herden, states that the "only real question involved" is:

"Has an abatable nuisance by injunction been alleged and proved wherein the stipulated facts show that the appellant, as agent, without reward, received the moneys of divers and sundry persons at an established place, admittedly operated without interference to person or property, outside of a duly licensed and enclosed dog track, and with said moneys purchased pari-mutuel tickets within the enclosure of a duly licensed dog track in Pinellas County, Florida, in accordance with the prior instructions of the aforesaid persons, under an agreement that no charge is made for purchasing the ticket or tickets but in the event of winnings that the appellant collect and deliver the same to the said persons for whom the purchase or purchases have been made, less 10% compensation for collection service?"

The agreed statement of facts contains statements, among others, that the business operated by the defendant and complained of in the bill of complaint is as follows:

"That the defendant operates a place of business * * *

known as Herden's Original Agency, located at 464 First Avenue North, room No. 35, in the city of St. Petersburg, Pinellas County, Florida, * * * approximately seven miles from the Kennel Club.

"That the defendant nor any of his agents are interested in the ownership * * * of the * * * Kennel Club or the dog track operated by it.

"That the defendant and his agents at his place of business aforesaid is open to receive orders and money for the purchase of pari-mutuel tickets of the St. Petersburg Kennel Club, * * *

"That the defendant receives the price charged by the St. Petersburg Kennel Club for the purchase of any ticket from any customer with whom he deals, * * * and uses the entire amount received from the customer to purchase said ticket or tickets and purchase the same within the enclosure of the St. Petersburg Kennel Club.

"That the defendant has no other agreement nor makes any other charges, other than * * * that the defendant will collect the amount or cash value of each ticket which wins or is on a winning dog, deducting therefrom for his services in making such collection ten per cent of the cash value of any such ticket or tickets so purchased by him * * *

"That there is no charge for the purchase of the item or ticket but * * * in the event said item or ticket has a cash value after the race is run, that he will collect the same, receiving for such collection a fee of ten per cent of the cash value of such ticket or item.

"That on any deposits received by the defendant for the purchase of a ticket or tickets for a customer of the defendant and on any tickets purchased for the customer which are not a winning ticket or which have no cash value after the race is run, the defendant receives no compensation directly or indirectly.

"That the defendant has no interest in any ticket purchased by him for another and stands to lose nothing nor gain anything because of his purchase for another from monies deposited with him and tickets purchased by him within the enclosure of the track, except as above stated."

It thus appears from the above quoted agreed statements of facts that the defendant does engage, at a place far removed from the race track, in the business of receiving money from others for the purchase of tickets which though to be purchased at the race track without charge to the customers who furnish the money, yet under the transaction contract there is an agreed charge of ten per cent for collections on winning tickets; so there is recompense proximately, if not directly, received by the defendant from his business customer under the contract for the purchase of tickets, since the compensation for collecting on winning tickets has direct connection with, and is provided for in, the contract for the purchase of the tickets, even though the compensation is contingent upon the purchase of one or more winning tickets. Such transactions in substance and in fact violate the provision of Section 16 of the quoted statute which enacts that "no person * * * shall directly or indirectly purchase pari-mutuel tickets * * * for another for hire or for any gratuity." The transactions stated being unlawful, the place where the business is done may be abated and the persons who conduct or maintain the place may under the statutes be enjoined as for the commission of a nuisance. Secs. 7832 (5639), 5029 (3223) C. G. L.

What has been said sustains the injunction order appealed from even if money for the purchase of pari-mutuel tickets given and received at any place other than within the enclosure of a duly licensed race track at the times permitted by the statutes, is not an integral part of a gaming

transaction that is made unlawful by the statutes of the State unless it takes place within a licensed race track enclosure at authorized times.

Affirmed.

ELLIS, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.